IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DANA LEANN PERKINS,

      Plaintiff,

vs.                                                                                                                       1:19-cv-1202 LF

ANDREW M. SAUL, Commissioner
of the Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Dana Leann Perkins's Motion to Reverse the ALJ Decision and Remand for Rehearing, with Supporting Memorandum (Doc. 21), which was fully briefed on October 5, 2020. *See* Docs. 26, 27. The parties consented to my entering final judgment in this case. Docs. 4, 10, 11. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the ALJ failed to properly weigh the opinions of Ms. Perkins's treating provider, Clinical Nurse Specialist (CNS) Cristina Carlson, and consulting psychiatrist, Paula Hughson, M.D. I therefore GRANT Ms. Perkins's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

    **I.**    **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks, brackets, and quotation omitted). The Court must meticulously review the entire record, but it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (quotation omitted). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* (quotation omitted). While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citation omitted). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A);

20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work."  20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience.  *Id.*

### III.    Background and Procedural History

Ms. Perkins was born in 1972, completed the tenth grade, and worked as a cashier, a housekeeper, and a janitor.  AR 217, 241.[3]  She protectively filed an application for Supplemental Security Income ("SSI") on December 20, 2016, alleging disability since August 28, 2016, due to Post-traumatic Stress Disorder (PTSD), bipolar disorder, and degenerative disc disease (neck and lumbar).  AR 217–23, 240.  The Social Security Administration ("SSA")

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Document 30 is the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

denied her claim initially on June 8, 2017.  AR 111–28.  The SSA denied her claim on reconsideration on September 13, 2017.  AR 129–45.  Ms. Perkins requested a hearing before an ALJ.  AR 159–61.  On October 3, 2018, ALJ Michelle K. Lindsay held a hearing.  AR 28–76.  ALJ Lindsay issued her unfavorable decision on April 9, 2019.  AR 9–27.

At step one, the ALJ found that Ms. Perkins had not engaged in substantial, gainful activity since October 25, 2016,[4] her application date.  AR 14.  At step two, the ALJ found that Ms. Perkins suffered from the following severe impairments: degenerative disc disease of the cervical and lumbar spine; fibromyalgia; PTSD; bipolar disorder; anxiety disorder; and vertigo.  *Id.*  The ALJ found Ms. Perkins had a history of other impairments that were not severe, including: bilateral shoulder impairments; hypertension; obesity; and a history of drug and alcohol abuse.  *Id.*

At step three, the ALJ found that none of Ms. Perkins's impairments, alone or in combination, met or medically equaled a Listing.  AR 15.  Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Perkins's RFC.  AR 16–21.  The ALJ found Ms. Perkins had the RFC to perform light work with the following limitations:

> [She] is able to lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently, and stand and walk for six hours in an eight-hour workday.  [She] can sit for only two hours in an eight-hour workday.  She can occasionally climb stairs and ramps, balance, stoop, crouch, kneel, and crawl, but can never climb ladders, ropes, or scaffolds.  She must avoid more than occasional exposure to extreme cold.  She must completely avoid unprotected heights and hazardous machinery.  She is able to understand, remember, and carry out simple instructions, and is able to maintain attention and concentration to perform and persist at simple tasks for two hours at a time without requiring redirection to task.  She can have little to no contact with the general public.  Interactions with co-workers and supervisors should be superficial and incidental to the work

---

[4] The ALJ notes Ms. Perkins' application date as October 25, 2016.  AR 14.  Her application, however, is dated December 20, 2016.  AR 217.  The Court presumes that the October 25, 2016 date is a typographical error.  The difference in date does not impact the Court's decision but may need to be addressed on remand.

performed.  She requires work involving no more than occasional change in the routine work setting.

AR 16.

At step four, the ALJ found Ms. Perkins was unable to perform her past relevant work. AR 21.  The ALJ found that Ms. Perkins was not disabled at step five because there were jobs that exist in significant numbers in the national economy that she could perform—such as housekeeper, routing clerk, shelving clerk, and merchandise marker.  AR 21–22.

On April 19, 2019, Ms. Perkins requested review of the ALJ's unfavorable decision by the Appeals Council.  AR 214–16.  On November 7, 2019, the Appeals Council denied the request for review.  AR 1–6.  Ms. Perkins timely filed her appeal to this Court on December 23, 2019.  Doc. 1.[5]

## IV. Ms. Perkins's Claims

Ms. Perkins raises three main arguments for reversing and remanding this case: (1) the ALJ improperly assessed the opinions of treating CNS Cristina Carlson, consulting psychiatrist Paula Hughson, M.D., and state agency psychologist Richard Sorensen, Ph.D. (Doc. 21 at 8–20); (2) the ALJ erred in assessing Ms. Perkins's symptoms (*id.* at 20–26); and (3) the ALJ erred at step five due to an inaccurate RFC, and because the ALJ failed to consider the effects of vertigo on the jobs available to Ms. Perkins (*id.* at 26–28).  Because I find that the ALJ failed to give legitimate reasons for rejecting CNS Carlson's and Dr. Hughson's opinions regarding Ms. Perkins's social limitations, I will remand for further consideration.  I will not address the other issues raised by Ms. Perkins because they may be affected by the Commissioner's treatment of this case on remand.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

---

[5] A claimant has 60 days to file an appeal.  The 60 days begins running five days after the decision is mailed.  20 C.F.R. § 404.981; *see also* AR 2.

5

V.      **Analysis**

Ms. Perkins challenges the ALJ's reasons for discounting the opinions of CNS Carlson, who treated her for approximately two years for mental health issues, and psychiatrist Dr. Hughson, who performed a consultative psychiatric examination at the request of Disability Determination Services in 2017. Although CNS Carlson did not offer an opinion in the form of functional limitations, her assessment of Ms. Perkins's ability to interact with people largely tracked Dr. Hughson's opinion. CNS Carlson opined that Ms. Perkins "can barely tolerate being around people," while Dr. Hughson found that Ms. Perkins has marked limitations in her abilities to interact with the public and coworkers and moderate limitations in her ability to interact with supervisors. AR at 413, 523. The ALJ gave both opinions "little weight" but failed to provide adequate reasons for this decision. AR 20. Accordingly, the Court will remand for further consideration.

An ALJ uses the factors set out in 20 C.F.R. § 416.927(c)(1)–(6) to weigh opinions rendered by both acceptable medical sources, such as Dr. Hughson, and other non-acceptable sources, such as CNS Carlson.[6] *See Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). The factors to be considered include:

> (1) the length of the treatment relationship and the frequency of examination;
> (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

---

[6] Ms. Perkins acknowledges that CNS Carlson is not an "acceptable medical source" under 20 C.F.R. § 416.927(f). *See* Doc. 21 at 9; *see also* AR 17 (noting that CNS Carlson is not an acceptable medical source under POMS § DI 22505.003). Regardless, the factors an ALJ uses to weigh medical opinions rendered by acceptable medical sources "apply equally to all opinions from medical sources who are not acceptable medical sources as well as from other non-medical sources." *See Frantz*, 509 F.3d at 1302 (quotation markets, brackets, and quotation omitted).

*Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quotation omitted); *see also* 20 C.F.R. § 416.927(c)(1)–(6). An ALJ need not discuss every factor, but to be sufficient, the decision must permit the court "to follow the adjudicator's reasoning . . . ." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (quotation omitted).

Here, CNS Carlson treated Ms. Perkins for mental health issues for approximately two years. *See* AR 400–01 (Sept. 2015 treatment note), 766–67 (Oct. 2017 treatment note). She diagnosed Ms. Perkins with PTSD and bipolar disorder and prescribed psychotherapy and lithium carbonate. *See, e.g.*, AR 386–87, 472. CNS Carlson submitted two opinions, both in the form of letters: the first dated January 20, 2016,[7] and the second dated August 29, 2016. AR 412–13. In her January 2016 letter, CNS Carlson stated that she was the "psychiatric provider" for Ms. Perkins, who has PTSD. AR 413. She opined that Ms. Perkins "is severly [sic] disabled by her symptoms of anxiety to the point of not being able to work. She can barely tolerate being around people, sleeps only a few hours a night and is emotionally stressed and labile. While she is in treatment, she is still disabled from this illness." *Id.* In August 2016, she opined that Ms. Perkins has "PTSD and bipolar disorder," "is disabled due to her symptoms of mental illness and unable to work," and is "adherent to her medications and treatment." AR 412.

Dr. Hughson saw Ms. Perkins for a one-hour consultative psychiatric examination on May 11, 2017. AR 518–23. Dr. Hughson diagnosed Ms. Perkins with PTSD, chronic; bipolar I disorder, mixed; alcohol dependence in remission; crack cocaine dependence in remission; and a breathing-related sleep disorder. AR 521. As relevant to this analysis, Dr. Hughson found that

---

[7] Ms. Perkins notes, "[i]t appears that someone altered the date on the January 2016 letter, changing it to 2015." Doc. 21 at 9 (citing AR 413). The Court agrees with Ms. Perkins that the date should be 2016 because Ms. Perkins did not start seeing CNS Carlson for treatment until September 2015. *See id.*; *see also* AR 400.

Ms. Perkins has marked limitations in her abilities to interact with the public and with coworkers and moderate limitations in her ability to interact with supervisors.  AR 523.  Dr. Hughson explained that "job situations would be limited by her anxiety and shame[-]based aggression around others."  AR 522.

The ALJ gave both providers' opinions "little weight."  AR 20.  By contrast, the ALJ gave "great weight" to and essentially adopted the opinion of non-examining State agency consultant Richard Sorenson, Ph.D., who reviewed the record on June 5, 2017.  *See* AR 20, 126.  Dr. Sorenson assessed marked limitations in Ms. Perkins's ability "to interact appropriately with the general public," but only moderate limitations in her abilities "to accept instructions and respond appropriately to criticism from supervisors" and "to get along with coworkers or peers without distracting them or exhibiting behavioral extremes."  AR 125.  He further opined that when Ms. Perkins is "treatment/medication compliant and substance free, [she] retains the capacity to . . . interact appropriately with coworkers[,] supervisors and the general public on an incidental basis [and] would do best in a position requiring minimal social interaction."  AR 125–26.

The ALJ's RFC assessment includes some social interaction limitations: Ms. Perkins may have "little to no contact with the general public" and only superficial interactions with coworkers and supervisors that is "incidental to the work performed."  AR 16.  The ALJ further relied on jobs that involve unskilled work.  AR 22.  Unskilled work requires the abilities to: (1) understand, remember, and carry out simple instructions; (2) make simple work-related decisions; (3) respond appropriately to supervisors, coworkers, and usual work situations; and (4) deal with changes in the routine work setting.  *See Nelson v. Colvin*, 655 F. App'x 626, 629 (10th

Cir. 2016). Unskilled work does not require the ability to interact appropriately with the public. *See id.*

Ms. Perkins argues that if the ALJ had given more weight to Dr. Hughson's assessment of marked limitations in her ability to interact with coworkers, which was buttressed by CNS Carlson's opinion that Ms. Perkins can "barely tolerate being around people," the RFC would reflect further restrictions. *See* Doc. 21 at 10–18. Instead, the ALJ relied on the non-examining reviewing physician's opinion, which assessed only moderate limitations in this area. *See* AR 20. Had the ALJ provided legitimate reasons for the weight assigned to either the treating or examining opinions, the Court would be more inclined to side with the Commissioner. The Court declines to do so, however, because the Commissioner's defense of the ALJ's faulty analyses of CNS Carlson's and Dr. Hughson's opinions rests solely on post-hoc rationalizations and harmless error analysis. *See* Doc. 26 at 7–14.

Regarding CNS Carlson's opinions, the ALJ mentioned only the January 2016 letter and discounted it because "[t]he [SSA] does not consider conclusory statements that a claimant is 'disabled' or not able to work as such opinion [sic] are reserved for the Commissioner." AR 20 (citing 20 C.F.R. § 416.927(d)). The ALJ said nothing about the August 2016 letter or the remaining opinions in the January 2016 letter. *See id.* Ms. Perkins contends that the ALJ erred by failing to provide valid reasons for giving CNS Carlson's January opinion "little weight" and by failing to consider the August letter at all. Doc. 21 at 10. The Commissioner concedes that the ALJ did not explicitly weigh the statements in CNS Carlson's January opinion, but argues that the failure was harmless because the ALJ incorporated restrictions that addressed CNS Carlson's concerns. Doc. 26 at 7–10. The Commissioner further asserts that CNS Carlson's statements were either unhelpful because they were not functional limitations, or they were

superfluous because the ALJ weighed similar statements elsewhere in the decision. *Id.* at 9 (arguing that "emotionally stressed and labile" is not "the type of functional limitation that is helpful to an ALJ in assessing a claimant's specific work-related restrictions or abilities, and that the ALJ weighed statements similar to CNS Carlson's opinion that Ms. Perkins "can barely tolerate being around people"). But the ALJ did not mention these reasons for rejecting CNS Carlson's opinion in her decision, and the "[C]ourt may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2006) (citations omitted). Ms. Perkins next asserts that the ALJ erred in failing to address the § 416.927(c) factors. Doc. 21 at 10–11. The Commissioner fails to address this point, and the Court will not supply any analysis on his behalf. *See* Doc. 26. Finally, the Commissioner argues that the ALJ's failure to address the August letter is harmless, because the second letter does not contain any additional information. *Id.* at 8. Again, the Court will not adopt this post hoc rationalization. The ALJ's analysis of CNS Carlson's opinion was deficient.

The ALJ found that Dr. Hughson's opinion was inconsistent with her "own findings and the overall evidence." AR 20. ALJ Lindsay did not, however, specify which of Dr. Hughson's findings or what record evidence was inconsistent with her opinion. *See id.* The Commissioner points to a different section of ALJ Lindsay's opinion in which she found that Ms. Perkins "does not appear to have any issues interacting and cooperating with medical staff during her appointments."[8] Doc. 26 at 11; AR at 19 (citing AR at 519, 757). This might be pertinent to Ms.

---

[8] The Commissioner also asserts that Dr. Hughson's statement that Ms. Perkins has "sufficient intelligence and cognitive ability to understand, remember, and perform simple work tasks" is at odds with her opinion that Ms. Perkins has a marked limitation in her ability to carry out instructions due to physical limitations. *See* Doc. 26 at 11; AR 522–23. These findings are not necessarily contradictory. More likely, Dr. Hughson's opined limitation relates to how Ms.

Perkins's interactions with supervisors, as medical staff are akin to authority figures. It does not as neatly explain any inconsistencies in the limitation relevant here—the opined marked limitation in her ability to interact with coworkers.

In sum, the Court finds that the ALJ did not provide legitimate reasons for the weight assigned to CNS Carlson's and Dr. Hughson's opinions. The Commissioner urges the Court to find that the ALJ's errors in evaluating CNS Carlson's letters were harmless. Doc. 26 at 8–10. An ALJ's error is harmless only "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in another way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Because the ALJ erred in analyzing both the treating and the examining providers' opinions, which are arguably consistent regarding Ms. Perkins's mental limitations, the Court cannot find that the errors here are harmless.

Moreover, there is record evidence that lend support to the providers' opinions. For example, treatment records from CNS Carlson are replete with notes regarding Ms. Perkins's irritation, agitation, and feeling overwhelmed; her frustration and feeling overwhelmed while babysitting her grandchildren (which she eventually stopped because she could not "deal with that"); her withdrawal from family due to excess irritation; her desire to be "left alone"; and her "trouble dealing with people" due to her tendency to become "easily overwhelmed." *See* AR 514, 578,[9] 587, 766, 768. Ms. Perkins reported to Dr. Hughson that she had a history of being

---

Perkins's physical *pain* bears on her ability to perform work tasks, despite the fact that she has sufficient *intelligence* to perform those tasks.

[9] Ms. Perkins saw both CNS Carlson and a second provider, Amara Heising, at Albuquerque Heath Care for the Homeless. In the cited record, Heising noted that she met with both Ms. Perkins and CNS Carlson during the session. AR 578. Other treatment records from Heising show that Ms. Perkins reported "explosive anger/irritation and depression and" a desire "to isolate all the time. In the past [she] has hit walls with [her] fists, beaten up boyfriends [and]

"an ugly and hateful person" with "a long history of getting into altercations in public places such as the bus or the grocery store." AR 519.  She "cannot stand for people to touch her or be too close, even her children." *Id.*  Ms. Perkins stated her longest job was with a janitorial company for five years, and "she was able to keep that job because it did not involve contact with others." AR 520.  She also reported being arrested "for domestic violence towards her boyfriend and her sister in the late 1990s." *Id.*

Given the record evidence of significant limitations in social functioning, and because the ALJ sided with the non-examining reviewing physician while rejecting the treating and examining providers' opinions without adequately explaining her reasons for doing so, this issue deserves further evaluation.  *See, e.g.*, *Hosea v. Saul*, No. 19-cv-0811 SMV, 2020 WL 5821029, at *3–6 (D.N.M. Sept. 30, 2020) (where ALJ rejected opined marked limitations in social interactions rendered by treating and examining providers and adopted opinion of non-examining provider, court remanded for further evaluation).  Because the ability to interact with coworkers is required even for unskilled work, this matter will be remanded for further discussion of these providers' opinions in accordance with the regulations.

## VI.   Conclusion

The ALJ erred by failing to provide legitimate reasons for the weight assigned to the opinions of CNS Carlson and Dr. Hughson.  The Court will remand for reevaluation of these

---

family members, [and] has anger blackouts . . . ." AR 575.  Ms. Perkins stated that "[o]ther people should think like me and ought to do what I think they should do[;] I judge others a lot." *Id.*

Ms. Perkins later saw Reanna Cruz, NP, with Albuquerque Health Care for the Homeless. *See* AR 764.  She reported "several outbursts with people" in the past month but "demonstrated restraint after having verbal altercations." *Id.*  She later told Cruz that she had "issues with ongoing irritability, isolation, anhedonia, and poor sleep.  [She] state[d] 'I don't even leave my house anymore.'" *Id.*

opinions. The Court does not reach Ms. Perkins's other claimed errors, as these "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse the ALJ Decision and Remand for Rehearing, with Supporting Memorandum (Doc. 21) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent